In re Estate of J. C. Mansfield.

**HUSBAND AND WIFE: Antenuptial Contracts—Family Expenses.**
1  A clause of an antenuptial contract which provides that each party "agrees to contribute to the family expenses" in a named proportion, is not effective in favor of the wife after the death of the husband.

**EXECUTORS AND ADMINISTRATORS: Life Maintenance to**
2  **Wife.** Principle recognized that a wife may not, on the death of the husband, demand support and maintenance from the husband's estate, independent of and supplemental to the rights given to her by statute.

*Appeal from Shelby District Court.*—THOMAS ARTHUR, Judge.

JANUARY 27, 1919.

THIS case involves the right of a widow to support out of the estate of her husband, because of the provisions of an antenuptial contract. Opinion states the facts. Demurrer to the petition or claim of plaintiff sustained in the court below. Claimant appeals.—*Affirmed.*

*Byers, Byers & Miller,* for appellant.

*Edward S. White,* for appellee.

GAYNOR, J.—This action involves the right of the widow to have a claim allowed against the estate of her husband.

The record does not disclose when the husband died. It does show, however, that, on the 25th day of April, 1916, letters of administration were issued to J. C. Mansfield, who qualified and gave due notice of his appointment. On the 23d of April, 1917, the widow, Genevra A. Mansfield, filed with the clerk of the court her claim, duly verified, and substantially as follows: That she is the widow of deceased; that she was married on or about the 29th day of June, 1903; that, before the marriage, an antenuptial contract was entered into between her and her deceased husband, in the following words:

1. HUSBAND AND wife: antenuptial contracts: family expenses.

"This antenuptial contract, made and entered this the 29th day of June, 1903, by and between Joseph C. Mansfield of Shelby, Shelby County, Iowa, party of the first part, and Mrs. Genevra A. Sampey, of Shelby, Shelby County, Iowa, party of the second part, witnesseth: That whereas the said Joseph C. Mansfield and the said Genevra Sampey have entered into a contract for marriage to be solemnized in the near future, and both of the said parties hereto having real as well as personal property in their own names,

they do therefore make this antenuptial contract and agreement, which shall be mutually binding upon both parties hereto, and their heirs, administrators and assigns forever, to wit: First. That each of the parties hereto shall operate and manage their own property, both real and personal, independently of the other, the same as though they were not married. Second. Each party hereto hereby waives all right of dower which they would otherwise have, in and to all of the property of the other, and also waive all distributive interest which either would otherwise have in the personalty of the other. The intention being that neither shall have any interest in the property of the other, any more than if they had never been married. Third. Each party hereto hereby agrees to contribute to the family running expenses in proportion to their net income from their respective properties."

After the making of the said contract, the marriage was duly consummated. At the time of the execution of said contract, she, the widow, had no property whatsoever. The husband was the owner of both real and personal property, aggregating $3,500. His estate is now worth approximately $50,000. She has, since the marriage, acquired property, and has, at this time, property worth approximately $10,000. No children were born to this marriage. She, the widow, is now 57 years of age. The sum of $1,000 per annum is necessary for her support: that is, to support her in the circumstances in which she lived as the wife of the deceased.

It is claimed that, under the terms of the antenuptial contract, the estate of deceased should continue to contribute to the "family running expenses;" that the running expenses, in proportion to the net income from the respective properties, are $1,000 annually; that it is necessary, and for the best interest of the estate, that it be closed within three years. To this claim the administrator appeared, and filed a demurrer alleging that the facts stated

in the claim or petition do not entitle claimant to the relief demanded, for reasons hereinafter referred to. This demurrer was sustained, and the claim disallowed; and from this, the widow appeals.

That the contract. herein set out, is one which the parties to it were competent to make, and that, when made, it is binding upon both, in the absence of fraud, mistake, or undue influence, see *Fisher v. Koontz,* 110 Iowa 498, and cases therein cited. Such contracts are favored by the law. They tend, under some conditions, to promote happiness, by settling property questions which otherwise might be fruitful of dissension. Especially is this true when either or both of the parties had been previously married, and had children. The intent of the parties in making the contract, and the purposes sought to be attained by its making, when made plain in the contract, are recognized and enforced by the courts. When the contract is plain and unambiguous on its face, and the meaning is plainly indicated upon the instrument itself, there is no occasion to resort to any of the rules of construction. In construing a contract, and in ascertaining its meaning and the purpose of the parties, the words used must be given their usual and ordinary signification. There should be no unnatural or strained construction given to any part of the contract, in determining the intent and meaning of the parties. The contract should be construed as a whole, and every part given fair consideration in its relation to all other parts.

This record discloses that the claimant had been married before, but whether she had children or not does not appear. Whether he had been married before and had children, does not appear. He had property. She had none. The contract looked to the future. It had, in its purpose, the fixing and settling of rights in property in existence, and to be acquired during the continuance of the contem-

plated marriage. The contemplated marriage would, of necessity, result in the establishment of a home and family relationship, to preserve the integrity of which it was provided that each should contribute from his or her property in proportion to the net income. The family created by the marriage continued during the life of the marriage. Of course, children might be born, and in that way the family enlarged, and to their support, contribution was required, under the contract. Here, no children were born. Upon the death of either party, the family created by the marriage ceases to exist. Neither of the parties to the contract, in the contract, agreed to support the other after the dissolution of the marriage. Ordinarily, the wife, as such, has no right to support from the husband's property after his death. The rights given to her by statute are the right of homestead, the right of dower in his real estate, and the right to a distributive share of his personal property; and on this the law places limits, and the right of support for one year. No matter whether the property left by the husband is inadequate for the support and maintenance of the wife after his death, she can get from his estate only that proportion of the property left by him, which the law gives to her. There is no legal obligation on the estate of the husband to support the wife after the death of the husband, and there is no legal obligation resting upon his heirs to do so. If no antenuptial contract had been made, the plaintiff could not legally demand and receive what she is now asserting a right to have: to wit, support and maintenance during her life, out of the property of the deceased, independent of, and supplemental to, the rights given her by statute. When she entered into this antenuptial contract, she surrendered the right of dower in his real estate, and the right to a distributive share of his personal property. She stands, then, the same as if, under the law, there

2. Executors and Administrators: life maintenance to wife.

was no provision made for her out of his property upon his death. In the absence of any legal right to participate in the estate left by the husband, she is without right to assert a claim. The claim made here, however, is that, though she has surrendered all rights given her by statute, the contract in question preserves to her the right now asserted. So, in making this claim, she relies upon that provision of the contract which reads, "Each party to the contract agrees to contribute to the running family expenses." Her claim is that death did not destroy the family; that the family still remains, and that she is it; that the family still remaining "has running expenses" to which the other contracting party is bound by the contract to contribute.

The statute (Section 3165 of the Supplement to the Code, 1913), provides:

"The reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

This statute has stood upon the books for many years, and yet no one has ever had the temerity to claim that the rights and duties and liability created by this statute continued after death. Upon the death, the property passes to those legally entitled to it, unincumbered by any right of the family, as such, to receive support from it. The owner of the property, notwithstanding this statute, can dispose of it by will, and, on such disposition, it passes absolutely to those to whom it is bequeathed, and this, though the family, as such, is left with no means of support; and this is true, though the wife is a member of the family while it exists. Under this statute, she can receive no more upon the death of her husband than her dower right, her distributive share in his property, and the allowance for her support for one year. This may be wholly inadequate for her support, and yet the law makes no provision for

her, after his death, other than this. Though the share in the husband's property given to the wife is wholly insufficient for her support, the law gives her no further claim. No one has ever thought of construing this statute to say that the wife, after the death of the husband, is entitled, by virtue of the statute, to the support of herself and family out of his property during the life of the wife. The provision of the contract relied upon is not broader in its scope and purpose than is this statute. The family referred to is the family that continues to exist during the life of the husband. That is the family that was contemplated by the contract. That is the family that was brought into existence by the marriage. That is the family that continued to exist, only during the life of the marriage. Upon the dissolution of the marriage, the obligation to support the wife ceased, both under the contract and under the statute. The wife has not here invoked the statute which authorizes an allowance for the support of the widow for one year. The rights she is seeking to enforce here are her rights which she claims grow out of the antenuptial contract; and this contract does not give to her a continuing right to support, after his death, even though we should assume that she is a family. As we have already said, the contract must be interpreted so as to carry out the purpose and meaning of the parties to the contract; must be construed to carry out the evident intent of the parties in making the contract. Let us suppose that children came of this marriage, and that, upon the death of the husband, the family consisted of the wife and the children. The wife having waived all right to the property, it passed to these children, as the heirs at law of the other contracting party. If no antenuptial contract had been made, it would pass to them the same, except that the widow would be entitled to her distributive share out of the property. This is the only provision which the law has made for the wife, and

this she has surrendered. With the dissolution of the marriage, happening immediately upon the death of the husband, the family contemplated by this contract ceased to exist, and the provisions of the contract relied upon ceased to be operative.

On the whole record, we think the plaintiff has shown no right to what she is now claiming, and the demurrer was rightly sustained.—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.